# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellant**
**v.**
**Private First Class OLANREWAJU O. DAIRO**
**United States Army, Appellee**

ARMY MISC. 20160213

Headquarters, Fort Drum
S. Charles Neill, Military Judge
Lieutenant Colonel John J. Merriam, Staff Judge Advocate

For Appellant:  Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Captain Jihan Walker, JA; Captain Samuel E. Landes, JA (on brief); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Captain Jihan Walker, JA (on reply brief).

For Appellee:  Lieutenant Colonel Jonathan F. Potter, JA; Major Andres Vazquez Jr., JA; Captain Katherine L. Depaul, JA (on brief).

27 October 2016

---------------------------------------------------------------------
OPINION OF THE COURT AND ACTION ON APPEAL
BY THE UNITED STATES FILED PURSUANT TO
ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE
---------------------------------------------------------------------

MULLIGAN, Senior Judge:

Appellee stands charged with the sexual assault of a child between the age of twelve and sixteen in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [hereinafter UCMJ].  The United States filed a timely appeal with this court pursuant to Article 62, UCMJ, contending the military judge abused his discretion in excluding evidence under Military Rule of Evidence [hereinafter Mil. R. Evid] 404(b).

In broad terms, the government alleges appellee engaged in two extraordinarily similar patterns of conduct in having sex with two teenage girls.  Appellee is charged with the sexual assault of LM, who was fifteen at the time of the alleged

intercourse. Appellee is not charged with any offense against BB, as she was sixteen. It is the military judge's exclusion of appellee's conduct with BB under Mil. R. Evid. 404(b) that forms the basis of the government's appeal.

## BACKGROUND

At trial, the government asserted the following facts[1]: Appellee, while stationed at Fort Drum in March 2015, used social media applications, to include Whisper, to

---

[1] In an appeal under Article 62, UCMJ, we do not have fact-finding ability absent a clearly erroneous finding. These facts are provided as background. The military judge's findings of fact are not clearly erroneous and were limited to:

The accused is charged with a single specification of sexual assault of a child between the age of 12 and 16 years old.

The Government's theory of the case is as follows:

a. The accused met Miss [LM, the alleged charged victim] on the web site Whisper. The two were friendly and communicated by instant messages on the web site. They eventually agreed to meet in person and, on or about 1 April 2015, they met at a gas station in Adams, New York. At the time the accused was 27 years old and the victim was 15 years old.

b. The accused drove the alleged victim in his vehicle to a McDonald's in Watertown, New York. At the McDonald's, the accused asked for extra napkins.

c. After going to the McDonald's, the accused drove the alleged victim to a secluded parking lot. The accused and the alleged victim then had sexual intercourse in the vehicle.

d. The accused wore a condom during the intercourse. He took the condom off after having sex with the alleged victim and put the condom in the napkins he obtained from McDonald's. He then offered hand sanitizer to the alleged victim.

e. The accused drove the alleged victim back to her home.

f. Although she was under the age of consent, the alleged victim believes that the intercourse with the accused was consensual.

(continued . . .)

2

contact BB and LM, two females, aged sixteen and fifteen years respectively. Appellee posed as BB's classmate "Jake" and arranged to meet her at a local McDonald's. Despite recognizing appellee was not her classmate "Jake," BB entered appellant's vehicle. Appellee drove BB to a park where they held a brief conversation before driving to the mall. Appellee and BB stayed at the mall to watch a movie, and after the movie, drove to a Burger King. Appellee ordered food for BB and asked for extra napkins. Appellee then drove BB back to the park where they engaged in sexual intercourse in appellee's vehicle by the zoo parking lot. Once they were finished, appellee placed the used condom in a napkin, put hand sanitizer on it, and disposed of it in the Burger King bag. Appellee then drove BB back home.

According to the government, appellee similarly met LM through the internet and had been in contact with LM for multiple months prior to his encounter with BB. Appellee knew LM was fifteen years old, and LM knew he was twenty-seven. On 1 April 2015, two to three days after meeting BB, appellee arranged to pick up LM at a local shopping center. Appellee took LM to a McDonald's, ordered her a milkshake, and asked for extra napkins. They then drove to the same park where appellee took BB and parked by the zoo area. Appellee and LM had a prolonged conversation in the car and then engaged in sexual intercourse. Once finished, appellee placed the used condom in a napkin, put hand sanitizer on it, and offered LM hand sanitizer. Appellee then drove LM back home.

BB and LM communicated with each other about their shared experiences with appellee. BB reported the incident to her mother who subsequently notified civilian authorities, who then transferred the case to military law enforcement. U.S. Army

---

(. . . continued)

Sometime before the charged offense, the accused began communicating with Miss [BB] on the Whisper website. At that time, Miss [BB] was 16 years old. The accused and Miss [BB] agreed to meet at a McDonald's near her home in Adams, New York. While in Watertown the accused took Miss [BB] to a Burger King. At the Burger King the accused asked for extra napkins.

After leaving Burger King, the accused took Miss [BB] to a secluded parking lot in Thompson park. The two had consensual sexual intercourse in the accused's vehicle. The accused wore a condom, put it in the napkins from Burger King, put hand sanitizer on the condom, and then discarded the items in the Burger King bag. The accused then drove Miss [BB] back to her home.

Criminal Investigation Command (CID) Special Agents (SA) interviewed BB, BB's mother, LM, and appellee. Appellee acknowledged in his sworn statement that he had contacted LM through Whisper, and he met with her on the date alleged. He further acknowledged he took her to McDonald's, bought her ice cream, but denied going anywhere other than McDonald's. He denied any physical or sexual contact.

The government charged appellee with the sexual assault of a child between the ages of twelve and sixteen in violation of Article 120, UCMJ. The government provided notice before trial that it intended to bring in BB's testimony under Mil. R. Evid. 404(b). The defense filed a motion in limine to exclude the evidence. After an Article 39(a), UCMJ, session with testimony and argument, the military judge ruled in favor of the defense by excluding the "relationship" with BB, and the government filed a timely Article 62, UCMJ, appeal.

## LAW AND DISCUSSION

When acting on interlocutory appeals pursuant to Article 62, UCMJ, our court may act "only with respect to matters of law" and we may not substitute our own fact finding. *United States v. Baker*, 70 M.J. 283, 288 (C.A.A.F. 2011). We review the facts under a clearly erroneous standard and conclusions of law de novo. *United States v. Jones*, 73 M.J. 357, 360 (C.A.A.F. 2014). We may not make additional findings of fact; rather, "[o]n questions of fact, [our] court is limited to determining whether the military judge's findings are clearly erroneous or unsupported by the record. If the findings are incomplete or ambiguous, the 'appropriate remedy . . . is a remand for clarification' or additional findings." *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F. 1995) (quoting *United States v. Kosek*, 41 M.J. 60, 64 (C.M.A. 1994)). This court may not "find its own facts or substitute its own interpretation of the facts." *United States v. Stellato*, 74 M.J. 473, 482 (C.A.A.F. 2015) (quoting *United States v. Cossio*, 64 M.J. 254, 256 (C.A.A.F. 2007).

"A military judge's decision to admit or exclude evidence is reviewed for an abuse of discretion." *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Military Rule of Evidence 404(b) bans evidence of prior acts to show a general propensity or predisposition to commit a crime, but allows such evidence to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." This list is non-exhaustive, and "it is unnecessary . . . that relevant evidence fit snugly into a pigeon hole provided by Mil. R. Evid.

404(b)." *United States v. Castillo*, 29 M.J. 145, 150 (C.M.A. 1989). Our superior court has "consistently held that Mil. R. Evid. 404(b) is a 'rule of inclusion.'" *United States v. Tyndale*, 56 M.J. 209, 212 (C.A.A.F. 2001). When considering the admissibility of evidence of a prior act under Mil. R. Evid 404(b), the military judge must answer each of the following:

> 1) Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs, or acts?
>
> 2) What fact of consequence is made more or less probable by the existence of the evidence? [In other words, what is the logical relevance?]
>
> 3) Is the probative value substantially outweighed by the danger of unfair prejudice?

*United States v. Staton*, 69 M.J. 228, 230 (C.A.A.F. 2010) (citing *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989)) (internal quotations omitted). "The evidence at issue must fulfill all three prongs to be admissible." *United States v. Yammine*, 69 M.J. 70, 77 (C.A.A.F. 2010).

The government offered five bases of logical relevancy for the admission of the Mil. R. Evid. 404(b) evidence: modus operandi, plan, preparation, intent, and motive. The military judge would not allow the government to proffer any evidence as "modus operandi" and limited the government to those specific bases delineated in the rule.[2] So limited, the government then articulated a basis for plan, preparation, motive, and intent.

---

[2] Modus operandi evidence is usually only relevant to prove identity. *Reynolds*, 29 M.J. at 110 (citing *United States v. Rappaport*, 22 M.J. 445 (C.M.A. 1986)). However, prior acts that are "significantly similar" to the charged offenses can be relevant evidence of "design," "system," or "purpose" for 404(b) admissibility. *Reynolds*, 29 M.J. at 110. The Court of Appeals of the Armed Forces tests the logical relevancy of 404(b) evidence for modus operandi by employing a six factor analysis. The Court looks to "(1) the '[r]elationship between victims and appellant'; (2) the '[a]ges of the victims'; (3) the '[n]ature of the acts'; (4) the '[s]itus of the acts'; (5) the '[c]ircumstances of the acts'; and (6) the '[t]ime span.'" *United States v. Barnett*, 63 M.J. 388, 395 (C.A.A.F. 2006) (quoting *United States v. Morrison*, 52 M.J. 117, 121-22 (C.A.A.F. 1999)).

At an Article 39(a), UCMJ, session to hear the government's motion, the military judge appeared particularly concerned that appellee's sexual intercourse with BB did not constitute a criminal act, as she was sixteen at the time. Both during the Article 39(a) session and in his written ruling, the military judge repeated this fact as a controlling concern.

We see no requirement, either in the plain text of the rule or in case law, that evidence introduced under Mil. R. Evid. 404(b) be evidence of a criminal act.[3] In fact, we find the opposite.

In conducting the second prong of the *Reynolds* test, the military judge erred when he found that Miss BB's ability to consent to intercourse is a controlling factor. This mistaken belief led to contradictory conclusions. First, the military judge found that "the accused certainly had similar intent and motive to have sexual intercourse in both instances." However, he also came to the contradictory conclusion that "the accused's intent or motive to have sexual intercourse with BB (who is over the age of consent) is not relevant" to his intent and motive to commit a sexual assault on the victim who was not of the age of consent. While intent and motive are similar, they are separate concepts. Intent is an element. Motive is the why. Evidence of other crimes, wrongs and even "acts" are specifically admissible to prove *inter alia*, intent. Mil R. Evid. 404(b); *see also Barnett*, 63 M.J.at 394. We cannot reconcile the military judge's reasoning.[4] In the same sentence the military

---

[3] Unlike Mil. R. Evid. 413, which has as a threshold requirement that the accused committed another sexual *offense*, Mil. R. Evid. 404 has no such requirement. "[A]n act need not be a crime to be logically relevant." *United States v. Franklin*, 35 M.J. 311, 319 (C.M.A. 1992) (quoting Imwinkelried, Uncharged Misconduct Evidence § 2:16 at 43 of Ch. 2) (1984)). The record can easily be interpreted to support an inference the military judge erroneously imported such a requirement for an offense from Mil. R. Evid 413 into Mil. R. Evid. 404(b).

[4] Our superior court has "repeatedly concluded that a pattern of lustful intent, established in one set of specifications, could be used by factfinders as proof of lustful intent in a different set of specifications." *United States v. Tanksley*, 54 M.J. 169, 175 (C.A.A.F. 2000), *overruled on other grounds by United States v. Inong*, 58 M.J. 460, 464 (C.A.A.F. 2003); *United States v. Sweeney*, 48 M.J. 117, 120-21 (C.A.A.F. 1998); *United States v. Ruppel*, 49 M.J. 247, 250 (C.A.A.F. 1998); *United States v. Johnson*, 49 M.J. 467, 473-74 (1998); *United States v. Miller,* 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Herbert*, 35 M.J. 266, 268 (C.M.A. 1992); *United States v. Bender*, 33 M.J. 111, 112 (C.M.A. 1991); *United States v. Munoz*, 32 M.J. 359, 363-64 (C.M.A. 1991); *Reynolds*, 29 M.J. at 109-110; *United States v.*

(continued . . .)

judge stated appellee's "motive and intent" were the same with regards to both children, and the motive is "not relevant" because one teenager was sixteen. The "motive" in question is the reason someone engages in a course of conduct, not their reason for violating a statute.[5]

In conducting the third prong of the *Reynolds* test, the military judge remained focused on the "non-criminal" nature of the other act(s) with Miss BB. He described the fact that intercourse with a sixteen year-old is not criminal as a "threshold" matter for the court's consideration. Indeed, the legality of the prior act is "irrelevant to [its] admissibility" under 404(b). *United States v. Cardillo*, 708 F.2d 29, 30 (1st Cir. 1983) (holding that noncriminal possession and sale of foreign counterfeit coins was admissible to prove intent to sell illegal U.S. coin counterfeits); *see United States v. Dennis*, 497 F.3d 765, 768-69 (7th Cir. 2007) ("Rule 404(b) does not exclude evidence of 'other acts' that are not criminal."); *see also United States v. Rhea*, 33 M.J. 413, 423 (C.M.A. 1991) (upholding military judge's finding that noncriminal possession of sexually explicit books was more probative than prejudicial to prove motive for raping stepdaughter). Even "especially flagrant and repugnant" misconduct can be more probative than prejudicial when testimony of the prior act is "indispensable for a full understanding by the factfinder of the transaction which has given rise to a criminal charge." *Castillo*, 29 M.J. at 151 (holding prior acts of sodomy on his child step-daughter

---

(. . . continued)
*Cox*, 18 M.J. 72, 74-75 (C.M.A. 1984). However, this reasoning does not imply the conduct must be charged, or even criminal. *Tanksley,* 54 M.J. at 175.

[5] The following colloquy took place in the Art. 39(a) session:

MJ: How do you believe it shows motive?

TC: In both of these the sufficient—I'm sorry—the similar fact pattern it clearly indicates if you look at the totality of the circumstances that the motive was to have sex with both these individuals.

MJ: How would that be relevant for the charged offense? Put another way, it appears that the accused's motive with Miss [BB] would have been to have consensual sex with someone who is capable of consent.

How would that be relevant to show that he intended to have or had a motive to have consensual sex with someone who is under the age of consent?

admissible to clarify his motives for requesting oral sex through a hand motion); *see United States v. Simpson*, 56 M.J. 462, 464 (C.A.A.F. 2002).

In short, we find the military judge erred as a matter of law when he determined that, as a "threshold matter," evidence admitted under Mil. R. Evid. 404(b) must be evidence of a crime. Additionally, the military judge erred as a matter of law when he limited the types of admissible evidence to the non-exhaustive list in Mil. R. Evid. 404(b). Accordingly, we find the military judge abused his discretion in excluding the evidence relating to BB, and set aside the ruling.

However, to be clear, we do *not* rule that the evidence of appellee's "other acts" with BB are admissible. Here, we are guided by two concerns: First, as an interlocutory appeal, we are presented with an undeveloped record. The probative weight of evidence under Mil. R. Evid. 404(b) will likely turn on developments at trial. If questions of identity, plan, preparation, or motive are put at issue, (and the pretrial motion practice raises such a possibility), the outcome of the *Reynolds* test may change. As this case is in a pretrial stage, we are poorly positioned to decide this issue now. Second, prudence suggests we return this case to the military judge for reconsideration in light of this opinion.

## CONCLUSION

The appeal of the United States pursuant to Article 62, UCMJ, is GRANTED. The military judge's 22 March 2016 ruling is VACATED. The record will be returned to the military judge for action consistent with this opinion.

Judge FEBBO and Judge WOLFE concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

8