*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
KISOR, GANNON, and KORN
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Aron B. DOWNS**
Gunner's Mate First Class Petty Officer (E-6), U.S. Navy
*Appellant*

**No. 202500109**

_____

Decided: 27 May 2026

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Kimberly J. Kelly

Sentence adjudged 1 November 2024 by a general court-martial tried at Naval Air Station Pensacola, Florida and Naval Air Station Jacksonville, Florida. Sentence in the Entry of Judgment: reduction to E-1, confinement for 18 years and 6 months, and a dishonorable discharge.

For Appellant:
*Lieutenant Jesse B. Neumann, JAGC, USN*

For Appellee:
*Lieutenant Commander Philip J. Corrigan, JAGC, USN (argued)*
*Lieutenant K. Matthew Parker, JAGC, USN (on brief)*

Judge KORN delivered the opinion of the Court, in which Senior Judge
KISOR and Judge GANNON joined.

————————————

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

————————————

KORN, Judge:

A general court-martial composed of members convicted Appellant, con-
trary to his pleas, of one specification of attempted sexual assault of a child,
one specification of attempted sexual abuse of a child by intentionally com-
municating indecent language, one specification of distributing child pornog-
raphy, and one specification of viewing child pornography, in violation of Arti-
cles 80 and 134, Uniform Code of Military Justice (UCMJ).[1] Appellant pleaded
guilty to three specifications of communicating indecent language, in violation
of Article 134. The military judge sentenced Appellant to reduction to E-1, con-
finement for 18 years and 6 months, and a dishonorable discharge.

Appellant raises six assignments of error (AOE), which we renumber as
follows:

> **I. Whether the military judge erred by (1) ruling that HN
> Bravo was not required to administer Article 31(b) warn-
> ings and (2) admitting evidence derived from Appellant's
> unwarned statements to HN Bravo.**
>
> **II. Whether the military judge erred in permitting the
> prior Whisper chats to be used as evidence of intent un-
> der Mil. R. Evid. 404(b).**
>
> **III. Whether the evidence is factually sufficient to prove
> that the act of "traveling to meet 'Kelsey'" was a substan-
> tial step taken with the specific intent of sexually assault-
> ing a fictitious minor.**

---

[1] 10 U.S.C. §§ 880, 934.

**IV. Whether the military judge erred by admitting impermissible sentencing evidence.**

**V. Whether Appellant's sentence is plainly unreasonable.**

**VI. Whether under *United States v. Palik*, trial defense counsel was ineffective for failing to move for production of the NCIS interrogation under R.C.M. 914.[2]**

We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

The series of events that led to this appeal began when Appellant, a married 29-year-old with a newborn child, responded to a post on the messaging application "Whisper" which read "I don't wana go to school tomorrow."[3] Shortly after Appellant responded, the poster identified herself as "Kelsey," a 12-year-old girl in sixth grade.

Appellant sent a series of sexually explicit messages to "Kelsey," and proposed meeting in person to engage in sexual activity. Unbeknownst to Appellant, he was actually corresponding with Mr. Sierra,[4] an adult man in Indiana who was posing as "Kelsey" in order to "catch and expose online child predators."[5]

Because Appellant was in Jacksonville, Florida, Mr. Sierra enlisted a Florida-based woman, Ms. Delta, to confront Appellant when he tried to meet "Kelsey." Ms. Delta ran "Protect the Innocent" (PTI), where she worked to expose would-be sex offenders, filmed the encounters, and posted them online. Ultimately Appellant and "Kelsey" agreed to meet at a movie theater in Jackson-

---

[2] It is clear from the record that the portion of the interrogation that Appellant now claims is missing never actually existed. Since Appellant's argument relies on a recording that never was, defense counsel was not deficient for failing to seek it, and we see no need to further analyze this issue. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987); *United States v. Murray*, No. 2024-04, 2024 CCA LEXIS 280, *10 (A.F. Ct. Crim. App. July 12, 2024) (determining that R.C.M. 914 does not apply to a recording that never existed).

[3] Pros. Ex. 2 at 1.

[4] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[5] R. at 640-41.

ville, after which they planned to spend the night at Appellant's house. Appellant told "Kelsey" he would get condoms, asking her, "You want sex tonight don't you?"[6]

Ms. Delta went to the movie theater to confront Appellant. She was accompanied by her husband, Hospital Corpsman (HN) Bravo, who filmed the encounter. When the pair approached Appellant in the movie theater lobby, he ran out of the theater and into the parking lot. Ms. Delta and HN Bravo chased him, catching up to him near his car. While HN Bravo recorded the interaction, Ms. Delta spoke with Appellant about his chats with "Kelsey" and what he intended to do once he met her.

Appellant initially claimed he only intended to watch a movie and planned to tell "Kelsey" he'd changed his mind about engaging in sexual activity with her. However, he admitted to sending the sexually explicit messages, repeatedly said that he had a problem and needed help, and ultimately admitted that he had purchased a box of condoms and brought them with him to the movie theater. Ms. Delta then walked away to call local Clay County law enforcement, who came to the parking lot and spoke with Appellant. In Ms. Delta's absence, HN Bravo continued the conversation with Appellant.

Ms. Delta later reported Appellant's actions to the Naval Criminal Investigative Service (NCIS), which opened an investigation and interviewed Appellant. Appellant spoke about his interactions with "Kelsey," and further told the agents that they would find images of child pornography on his phone, and that he had exchanged child pornography with other Whisper users.

A subsequent forensic examination of Appellant's phone revealed multiple Whisper chats where Appellant had discussions about engaging in sexual activity with other Whisper users' minor family members, and where he discussed his sexual interest in both his own daughter and his wife's 12-year-old sister. At trial, the Government introduced one of those chats to demonstrate Appellant's intent to engage in sexual activity with "Kelsey."[7] That chat included discussions where Appellant asked another Whisper user to bring their 15-year-old daughter to Florida so Appellant could have sex with her. This conversation occurred contemporaneously with Appellant's chat with "Kelsey." The forensic examination also found Whisper chats where Appellant exchanged child pornography with other Whisper users. The forensic examination further revealed more than 700 images of child pornography on Appellant's phone.

---

[6] Pros. Ex. 3 at 110.

[7] The military judge granted Appellant's motion to exclude two other chats.

During the presentencing hearing following Appellant's conviction, his wife presented a victim impact statement pursuant to Rule for Courts-Martial (R.C.M.) 1001(c), describing how she was impacted by Appellant's crimes. The military judge determined that Appellant's wife qualified as a victim under R.C.M. 1001(c) because she "has suffered certainly emotional trauma directly as a result of . . . [Appellant's] offense."[8] The military judge then ruled that she would consider some of the victim impact statement, but would not consider portions of it that were not "directly resulting from [Appellant's] offense."[9]

Defense presented an expert witness during presentencing who testified that Appellant had a "low risk of future recidivism." To rebut this evidence, the Government called an expert witness in digital forensics to offer Whisper chats that the military judge had precluded at trial on the merits. The military judge admitted this evidence, ruling that evidence of Appellant engaging in these other chats rebutted the conclusions of the recidivism risk assessment.[10]

## II. DISCUSSION

**A. The military judge correctly ruled that HN Bravo was not required to administer Article 31(b) warnings.**

### 1. Standard of Review

We review a military judge's ruling on a motion to suppress for an abuse of discretion.[11] It is an abuse of discretion when the military judge (1) predicates a ruling on findings of fact that are not supported by the evidence in the record; (2) uses incorrect legal principles; (3) applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) fails to consider important facts.[12] When a motion to suppress is based on improper rights warnings, we apply a clearly erroneous standard to the military judge's findings of fact, and review the conclusions of law de novo.[13]

### 2. Analysis

---

[8] R. at 1154.

[9] R. at 1155.

[10] R. at 1161-62.

[11] *United States v. Ramos*, 76 M.J. 372, 375 (C.A.A.F. 2017).

[12] *United States v. Rudometkin*, 82 M.J. 396, 401 (C.A.A.F. 2022).

[13] *United States v. Jones*, 73 M.J. 357, 360 (C.A.A.F. 2014) (quoting *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000)).

An involuntary statement, or evidence derived therefrom, is generally inadmissible if an accused makes a timely motion to suppress.[14] An "involuntary statement" is a statement obtained in violation of the Fifth Amendment, Article 31, UCMJ, or through coercion, unlawful influence, or unlawful inducement.[15]

"Article 31(b), UCMJ, warnings are required when (1) a person subject to the UCMJ, (2) interrogates or requests any statement, (3) from an accused or person suspected of an offense, and (4) the statements regard the offense of which the person questioned is accused or suspected."[16] "[T]he questioner's status and the military context in which the questioning occurs" contribute to whether there is an interrogation or request for a statement from a person suspected of an offense.[17]

The purpose behind Article 31(b) is "to avoid impairment of the constitutional guarantee against compulsory self-incrimination. Because of the effect of superior rank or official position upon one subject to military law, the mere asking of a question under certain circumstances is the equivalent of a command."[18] Article 31(b) warnings are not required in situations involving undercover officials or informants—even ones who are subject to the UCMJ—"[b]ecause undercover officials and informants do not usually place the accused in a position where a reasonable person in the accused's position would feel compelled to reply to questions."[19]

When reviewing whether Article 31(b) warnings were required, courts look to: (1) the scope of the questioner's authority as an agent of the military—focusing primarily on his "personal motivation;" and (2) whether a reasonable person in the appellant's position could consider the questioner to be acting in an official law enforcement or disciplinary capacity.[20] The Court of Appeals for the Armed Forces (CAAF) determined that rights warnings are required if "the

---

[14] Mil. R. Evid. 304(a).

[15] Mil. R. Evid. 304(a)(1)(A). Appellant argues that his statements to Ms. Delta and HN Bravo were involuntary both because of the lack of Article 31(b) warnings and because the statements were obtained through coercion, unlawful influence or unlawful inducement. We disagree with both of Appellant's contentions but find that only the issue of whether Article 31(b) warnings were required merits discussion.

[16] *Jones*, 73 M.J. at 361 (cleaned up).

[17] *See United States v. Cohen*, 63 M.J. 45, 49 (C.A.A.F. 2006).

[18] *United States v. Gibson*, 14 C.M.R. 164, 170 (C.M.A. 1954).

[19] *Jones*, 73 M.J. at 361 n.5.

[20] *Id.* at 362–63.

person conducting the questioning is participating in an official law enforcement or disciplinary investigation or inquiry . . . as opposed to having a personal motivation for the inquiry."[21]

Appellant argues that HN Bravo was required to provide Article 31(b) warnings to Appellant because he questioned Appellant in support of law enforcement purposes.[22] We disagree.

The military judge made the following findings of fact, all of which are supported by the record and are not clearly erroneous: HN Bravo worked in the medical field at Naval Hospital Jacksonville, and his military duties were unrelated to law enforcement; prior to confronting Appellant, Ms. Delta and HN Bravo did not coordinate with civilian law enforcement or with any military unit; no law enforcement personnel—civilian or military—were aware of Mr. Sierra's or Ms. Delta's interactions with Appellant until after the confrontation at the movie theater; and prior to reporting Appellant following their confrontation, PTI never interacted with either NCIS or Clay County law enforcement.[23] HN Bravo's motivation for speaking with Appellant was therefore personal, as he was acting not in support of law enforcement, but as the cameraman for PTI, an organization run by his wife and focused on online content creation.

Appellant could not have reasonably believed HN Bravo was acting in a law enforcement or disciplinary capacity because, as the military judge found, he "was not dressed in uniform," "did not identify himself to the accused as a servicemember," and did not "hold [himself] out as" law enforcement.[24] It is clear from Appellant's statements that he did not believe either HN Bravo or Ms. Delta were affiliated with either law enforcement or the military.[25] In fact, Appellant specifically told NCIS that he knew that HN Bravo and Ms. Delta were not law enforcement.[26] Therefore, a reasonable person in Appellant's position would not believe HN Bravo and Ms. Delta were acting in an official law enforcement or disciplinary capacity, and would not feel compelled to reply to their questions.

---

[21] *Id.* at 361 (cleaned up).

[22] Appellant's Brief at 22.

[23] Appellate Ex. XLI at 3-4.

[24] Appellate Ex. XLI at 28; R. at 31–32.

[25] Appellate Ex. LXV at 25; Appellate Ex. XXVIII.

[26] Appellate Ex. XLI at 15; Appellate Ex. XXVIII.

HN Bravo was not required to issue Article 31(b) warnings because he was not acting in a law enforcement role and no reasonable person in Appellant's position would have believed HN Bravo was acting in a law enforcement role. The military judge therefore did not abuse her discretion in admitting Appellant's statements to Ms. Delta and HN Bravo.[27]

**B. The military judge did not err in permitting an uncharged Whisper chat to be used as evidence of Appellant's intent under Mil. R. Evid. 404(b).**

*1. Standard of Review*

Rulings to admit evidence under Mil. R. Evid. 404(b) are reviewed using the same abuse of discretion standard that we applied in the previous section.

*2. Analysis*

Rule 404(b) "is a rule of inclusion" that allows the admission of evidence of a crime, wrong or other act for purposes other than propensity, such as proving motive or intent.[28] Rule 404(b) prohibits the admission of evidence of a crime, wrong or other act to prove an accused's character or show that on a particular occasion an accused acted in accordance with that character.[29] Evidence of a crime, wrong or other act offered under Mil. R. Evid. 404(b) must satisfy the *Reynolds* test, which allows the admission of evidence when: (1) it reasonably supports a finding that the accused committed prior crimes, wrongs, or acts; (2) it makes a fact of consequence more or less probable; and (3) its probative value is not substantially outweighed by the danger of unfair prejudice.[30]

The military judge admitted one of the uncharged Whisper chats to demonstrate Appellant's intent to sexually assault "Kelsey," and precluded the Government from admitting two other chats. In the admitted chat, Appellant graphically expressed interest in meeting with the 15-year-old daughter of another Whisper user in order to engage in sexual activity. Appellant argues that the military judge abused her discretion in admitting this evidence.

---

[27] Because we conclude that Appellant's statements to Ms. Delta and HN Bravo were voluntary and were properly admitted, we need not consider whether any additional evidence in Appellant's case was derived from those statements.

[28] Mil. R. Evid. 404(b)(2); *United States v. Browning*, 54 M.J. 1, 6 (C.A.A.F. 2000).

[29] Mil. R. Evid. 404(b)(1).

[30] *See United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989).

Appellant does not challenge the military judge's finding that the uncharged Whisper chat met the first prong of the *Reynolds* test.[31] As to the second prong, Appellant argues that the chat "prove[s] nothing more than sexual fantasy or predisposition. [It] do[es] not prove an intent to travel to enact those fantasies."[32] We disagree. Nothing in the chat suggests the conversation is fantasy, and Appellant never questions the veracity of the other user's statements. Instead, Appellant asks the child's location and repeatedly asks the other Whisper user to bring the child to Florida to meet with Appellant for the purpose of engaging in sexual activity.

This conversation occurred contemporaneously with Appellant's conversations with "Kelsey," which involved similar discussions about meeting to engage in sexual activity. In addition to chatting with the Whisper user, Appellant exchanged texts with the 15-year-old,[33] sent her a photo of himself,[34] and expressed interest in meeting with her. He then sent copies of those texts to her parent as part of Appellant's ongoing efforts to arrange a meeting with the child, and Appellant continued to request a meeting until the day before he was apprehended trying to meet "Kelsey."

We agree with the military judge that "the evidence supports a conclusion that a singular intent to meet with a minor for the purpose of engaging in sexual activity motivated [Appellant's] conversations both in the uncharged Whisper chats and with 'Kelsey.'"[35] We further agree with the military judge that "the difference in the charged and uncharged conduct [traveling to meet Kelsey and asking the Whisper user to come to Florida] was more a question of logistical obstacles than dissimilar intent."[36] The military judge therefore correctly found that the uncharged Whisper chat satisfied the second prong of the *Reynolds* test.

---

[31] Appellant's Brief at 36.

[32] Appellant's Brief at 38.

[33] The people with whom Appellant was chatting were not identified, so law enforcement was unable to confirm that Appellant was actually chatting with a child, but it is clear from the chat itself that he believed he was chatting with a 15-year-old girl and her parent.

[34] It appears from the context of the chat that Appellant sent a photo of his exposed penis to the 15-year-old, although the image was not recovered by the forensic examination.

[35] App. Ex. LXVII at 5.

[36] App. Ex. LXVII at 5.

Once evidence satisfies the first two *Reynolds* factors, the military judge must evaluate the third factor by applying the Mil. R. Evid. 403 balancing test to determine whether the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the members, undue delay, wasting time, or needlessly presenting cumulative evidence."[37] The test considers the non-exhaustive factors established in *United States v. Berry*: (1) strength of proof of the prior act; (2) probative weight of the evidence; (3) potential for less prejudicial evidence; (4) distraction of the factfinder; (5) time needed for proof of the prior conduct; (6) temporal proximity; (7) frequency of the acts; (8) presence or lack of intervening circumstances; and (9) the relationship between the parties.[38]

We find that all of the *Berry* factors heavily favored admissibility. There was no less prejudicial evidence available to so clearly demonstrate Appellant's intent. The chat at issue unmistakably demonstrated Appellant trying to arrange sexual activity with a child on the same chat application where he corresponded with "Kelsey." The chat was frequent and took place during the same time frame Appellant was arranging to meet "Kelsey" in order to engage in sexual activity. The presentation of this evidence was straightforward, took little time, and did not distract the members.

Appellant did not argue at trial—nor does he argue before this Court—that he did not engage in the chat in question, which was singularly focused on sex with children. Instead, Appellant argues that "the probative value of the Whisper chats is equivocal at best and is substantially outweighed by the unfair prejudice of presenting propensity evidence of Appellant's private sexual fantasies."[39] Appellant further argues that the minimal probative value of the chat was outweighed by the risk of confusing the issues and misleading the members, as "The Whisper chats were private conversations of a sexual nature. . . . [and] [t]here is no basis to assert that the Whisper chats were criminal or wrongful acts rather than constitutionally protected conduct. . . . [and] reaching this determination would have necessitated a trial within [a] trial, thereby confusing the issue and violating [Mil. R. Evid.] 403."[40] Appellant further describes the Whisper chat as "sexual banter."[41]

---

[37] Mil. R. Evid. 403; *United States v. Solomon*, 72 M.J. 176, 180 (C.A.A.F. 2013).

[38] *United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005).

[39] Appellant's Brief at 40.

[40] Appellant's Brief at 41-42.

[41] Appellant's Reply at 10.

We disagree with Appellant's contention that because this chat might not be "criminal or wrongful" it therefore had limited probative value and created confusion and a waste of the members' time. Initially, Appellant ignores the third category under Mil. R. Evid. 404(b), which allows for the admission of evidence of a crime, wrong or *act*.[42] Therefore, it matters not whether Appellant's discussion with another Whisper user about his interest in having sex with minor children was overtly criminal, as Mil. R. Evid. 404(b) is not limited to criminal acts.[43] Because Mil. R. Evid. 404(b) allows for the admission of other non-criminal acts, the arguable lack of obvious criminality would neither confuse the members nor require them to waste time judging the potential criminality, as Appellant suggests. The military judge properly instructed the members that they could consider this evidence for its tendency to demonstrate

---

[42] Mil. R. Evid. 404(b) (emphasis added). Appellant makes a baseless argument that Mil. R. Evid. 404(b) requires the "other act" to be "wrongful," because "the commonsense canon of *noscitur a sociis . . .* counsels that a word is given more precise content by the neighboring words with which it is associated." Appellant's Brief at 41. But despite the wealth of case law analyzing both Mil. R. Evid. 404(b) and its federal counterpart, Appellant fails to cite a single case to support this imaginative theory. This Court, however, found countless cases, both military and federal, clearly demonstrating that Appellant's argument has been robustly denied by every court to consider the issue. *See United States v. Franklin*, 35 M.J. 311, 318 (C.A.A.F. 1992) (finding that an act offered under Mil. R. Evid. 404(b) need not be a crime to be logically relevant); *United States v. Reeder*, No. NMCCA 9800702, 2005 CCA LEXIS 211, at *6 (N-M Ct. Crim. App. June 30, 2005) (unpublished) (finding that Mil R. Evid. 404(b) encompasses innocuous acts if they are being tendered for the purposes set forth in the text of the rule); *United States v. Scott*, 677 F.3d 72, 78 (2d Cir. 2012) (determining that "Rule 404(b) is not limited to evidence of crimes or wrongs. By its very terms, Rule 404(b) addresses other crimes, wrongs, or *acts*. Nothing about these words implies that the 'other . . . acts' to which Rule 404(b) refers must be bad. Indeed, to read the Rule as such 'violate[s] the cardinal principle of statutory interpretation that courts must 'give effect, if possible, to every clause and word of a statute.'") (cleaned up); *See also United States v. Dairo*, 75 M.J. 867, 872 (A. Ct. Crim. App. 2016); *United States v. Devin*, 918 F.2d 280, 286 (1st Cir. 1990); *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988); *United States v. Kendall*, 766 F.2d 1426, 1436 n.5 (10th Cir. 1985); *United States v. Terebecki*, 692 F.2d 1345, 1348 n.2 (11th Cir. 1982); *United States v. Miller*, 573 F.2d 388, 392 (7th Cir. 1978); *United States v. Cooper*, 577 F.2d 1079, 1087-88 (6th Cir. 1978); *United States v. Beechum*, 582 F.2d 898, 901 n.1 (5th Cir. 1978), *cert. denied*, 440 U.S. 920, (1979).

[43] Because the issue is not before us, we make no finding regarding whether the language in the uncharged Whisper chat was criminal. However, the chat contained similar explicit discussions of sex with children as the chats for which Appellant pleaded guilty to communicating indecent language, detracting from Appellant's argument that "[t]here is no basis to assert that the Whisper chats were criminal or wrongful acts rather than constitutionally protected conduct." Appellant's Brief at 41.

Appellant's specific intent to commit the offense of sexual assault of a child against "Kelsey," and for no other purpose,[44] further mitigating the danger of unfair prejudice, confusing the issues, and misleading the members. The military judge therefore correctly found that the uncharged Whisper chat satisfied the third prong of the *Reynolds* test.

The military judge properly applied all three prongs of the *Reynolds* test to the evidence at issue. We therefore find that she did not abuse her discretion by admitting a Whisper chat where Appellant expressed interest in meeting a minor to engage in sexual activity.

**C. The evidence is factually sufficient to prove that the act of "traveling to meet 'Kelsey'" was a substantial step taken with the specific intent of sexually assaulting a minor.**

*1. Standard of Review*

This "Court may consider whether a finding of guilty is correct in fact upon request of an appellant who makes a specific showing of a deficiency in proof."[45] If an appellant makes such a showing, this "Court may weigh the evidence and determine controverted questions of fact," providing "appropriate deference to the fact that the trial court saw and heard the witnesses and other evidence."[46] If this Court is "clearly convinced that the finding of guilty was against the weight of the evidence," we "may dismiss, set aside, or modify the finding, or affirm a lesser finding."[47]

*2. Analysis*

An attempt offense under Article 80, UCMJ, requires "a specific intent to commit the offense, accompanied by an overt act which directly tends to accomplish the unlawful purpose."[48] The overt act must go beyond mere preparatory steps and be "a direct movement toward the commission of the offense."[49] The overt act must be a substantial step toward the commission of the crime,

---

[44] App. Ex. LXXXV at 15.

[45] Art. 66(d)(1)(B), UCMJ, 10 U.S.C. § 866(d)(1)(B).

[46] *Id.*

[47] *Id.*

[48] *United States v. King,* 71 M.J. 50, 52 (C.A.A.F. 2012) (quoting *Manual for Courts-Martial* (*MCM*), *United States,* (*MCM* 2008 ed.) pt. IV, para. 4.a.(a), c.(1)-(2)).

[49] *Id.*

and "must unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances."[50]

Appellant argues that the evidence is factually insufficient to prove that the act of traveling to meet "Kelsey" was a substantial step taken with the specific intent of sexually assaulting her.[51] We must first consider whether Appellant has made a specific showing of a deficiency in proof.[52] We find that by raising whether Appellant's driving to the movie theater was merely a preparatory step, and by arguing that the Government failed to establish that Appellant intended to sexually assault "Kelsey," Appellant has made a specific showing of a deficiency in proof to initiate our factual sufficiency review.

We are wholly unconvinced by Appellant's identified weaknesses in the evidence. This Court's case law demonstrates that traveling to meet a purported child, paired with explicit conversations about the acts they would engage in, is sufficient evidence to establish intent and constitute a substantial step towards sexually assaulting that child.[53] That is precisely what occurred in Appellant's case. Appellant's travelling to meet "Kelsey" with a box of condoms after arranging for her to spend the night at his house following the movie, paired with the explicit chats where he discussed the sexual acts he planned to engage in with her, constituted a substantial step taken with the specific intent to sexually assault "Kelsey."

Appellant engaged in a series of sexually explicit conversations with someone he believed to be 12 years old. He arranged to meet her in order to engage in sexual activity, he drove to the arranged meeting place with a box of condoms, and it is evident that he did so with the specific intent to have sex with her. We are therefore not clearly convinced that the finding of guilty was against the weight of the evidence.

---

[50] *See United States v. Winckelmann,* 70 M.J. 403, 407 (C.A.A.F. 2011) (cleaned up).

[51] Appellant's Brief at 43.

[52] Art. 66(d)(1)(B), UCMJ, 10 U.S.C. § 866(d)(1)(B).

[53] *United States v. Beltran,* No. 201500270, 2017 CCA LEXIS 96, at *13 (N-M. Ct. Crim. App. Feb. 14, 2017); *United States v. Grina,* No. 201700008, 2018 CCA LEXIS 61, at *9, (N-M. Ct. Crim. App. Feb. 8, 2018); *United States v. Keeter,* No. 201700119, 2018 CCA LEXIS 474, at *7-8 (N-M Ct. Crim. App. Oct. 3, 2018); *See also Winckelmann,* 70 M.J. at 408 (finding no substantial step toward enticement when there was no travel, no plan to meet, and no course of conduct equating to grooming behavior, but generally finding that traveling to meet a minor for sexual activity may constitute a substantial step in a prosecution for attempted sexual assault of a child).

**D. The military judge did not abuse her discretion by admitting a victim impact statement from Appellant's wife. Although the military judge erred by admitting extrinsic evidence of prior misconduct to rebut Appellant's recidivism expert, Appellant suffered no prejudice.**

*1. Standard of Review*

We review whether a military judge erroneously admitted evidence using the same abuse of discretion standard that we applied in previous sections.

*2. Analysis*

*a. The military judge did not abuse her discretion by allowing Appellant's wife to present a victim impact statement.*

Congress granted the victim of an offense under the UCMJ the right to be reasonably heard during any sentencing hearing related to that offense.[54] The President authorized the victim to make an unsworn statement.[55] A "crime victim" is "an individual who has suffered direct emotional, physical, or pecuniary harm as the result of the commission of an offense of which the accused was found guilty."[56]

Unsworn victim statements are not evidence, but presentencing matters that may be presented to and considered by the military judge.[57] Although an unsworn victim statement is not subject to the military rules of evidence, a military judge is not powerless to restrict its contents; the military judge has an obligation to ensure that a victim's unsworn statement comports with the parameters of victim impact or mitigation.[58]

Appellant's wife presented a victim impact statement pursuant to R.C.M. 1001(c), describing how she was impacted by Appellant's crimes. The military judge determined that Appellant's wife qualified as a victim under R.C.M. 1001(c) because she "has suffered certainly emotional trauma directly as a result of . . . [Appellant's] offense."[59] The military judge then ruled that she would

---

[54] *United States v. Edwards*, 82 M.J. 239, 245 (C.A.A.F. 2022).

[55] *Id.*

[56] R.C.M. 1001(c)(2)(A); Art. 6b, UCMJ, 10 U.S.C. § 806b.

[57] *United States v. Tyler*, 81 M.J. 108, 112 (C.A.A.F. 2021).

[58] *See id.*

[59] R. at 1154.

consider some of the victim impact statement, but would not consider portions of it that were not "directly resulting from [Appellant's] offense."[60]

Appellant pleaded guilty to three specifications of indecent language for conversations in which, among many comments demonstrating his sexual interest in children, he discussed his wife and sexually abusing her twelve-year-old sister and their own daughter, which his wife found "sickening and terrifying."[61] The military judge did not abuse her discretion in ruling Appellant's wife suffered "emotional trauma" when she "learned that [Appellant] had engaged in indecent language which did talk about not only her daughter and her sister but also herself."[62]

Although the victim impact statement included additional information that arguably did not comport with the parameters of victim impact as defined by R.C.M. 1001(c), the military judge properly ruled that she would not consider portions of it that were not "directly resulting from [Appellant's] offense."[63] As a result, the military judge did not abuse her discretion in determining that Appellant's wife was a victim and was authorized to present an unsworn statement pursuant to R.C.M. 1001(c).[64]

> *b. Although the military judge abused her discretion in admitting extrinsic evidence of Appellant's prior misconduct to rebut Appellant's recidivism expert, Appellant suffered no prejudice.*

During presentencing, Appellant called a forensic psychologist as an expert witness who testified that Appellant held a "low risk of future recidivism."[65] The Government then called a digital forensic expert witness to introduce extrinsic evidence of uncharged Whisper chats[66] to rebut the conclusion that Appellant had a low risk of recidivism.[67] The military judge admitted the chats

---

[60] R. at 1155.

[61] R. at 354–83; Pros. Ex. 16 at 1–4; Pros. Ex. 17 at 2, 4–5, 8, 12–22, 25–26.

[62] R. 1155.

[63] R. 1155.

[64] Even if the military judge abused her discretion in making this determination, the error was harmless, as Appellant's wife's statement was of limited quality and did not substantially influence the adjudged sentence.

[65] R. at 1127.

[66] The chats at issue here were the two uncharged chats that the military judge precluded on the merits under Mil. R. Evid. 404(b).

[67] R. at 1158.

over Appellant's objection, finding that they rebutted the opinion set forth in the risk assessment.[68]

Appellant argues that the military judge erred by admitting his prior Whisper chats to rebut the expert opinion that he presented a low risk of recidivism. The Government concedes that the admission of this evidence was error but argues that it was harmless. We agree with the parties that the military judge abused her discretion by admitting extrinsic evidence of Appellant's misconduct.[69] We therefore turn to the question of whether Appellant was prejudiced by the military judge's error.

"A sentence . . . of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused."[70] If a military judge erroneously admits sentencing evidence, the test for prejudice is whether "the error substantially influenced the adjudged sentence."[71] In determining whether an error substantially influenced a sentence, courts consider (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence.[72]

The Government's case against Appellant was extraordinarily strong, including Appellant's sexually explicit chat with "Kelsey" and his trip to meet her, condoms in hand. It included explicit Whisper chats where he discussed his sexual interest in children and tried to arrange to have sex with a child, and further discussed sexually abusing his twelve-year-old sister-in-law and his own daughter. It further involved evidence that he both viewed and distributed child pornography. Appellant's case, on the other hand, was exceptionally weak. Appellant presented testimony from his mother and the forensic psychologist, and he gave a brief unsworn statement where he apologized and stated he had been reading self-help books and speaking with a chaplain.

---

[68] R. at 1162.

[69] *See United States v. Clark,* 2004 CCA LEXIS 63, at *4 (N-M. Ct. Crim. App. Mar. 9, 2004) (finding that when an accused puts his rehabilitative potential in issue, prior instances of similar misconduct became relevant to test the basis of his witnesses' opinions, but extrinsic evidence of that misconduct is not admissible to rebut an opinion as to an accused's rehabilitative potential).

[70] Art. 59(a), UCMJ, 10 U.S.C. § 859(a) (2016).

[71] *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009) (cleaned up).

[72] *United States v. Hamilton*, 78 M.J. 335, 343 (C.A.A.F. 2019).

Turning to the materiality and quality of the improperly admitted Whisper chats, we conclude that although they are material because they involve similar conduct to that for which Appellant was convicted, they are not of significant quality. That limited quality is due primarily to the fact that they were largely cumulative with the various chats that were properly in evidence.[73] The improperly admitted chats were also of insignificant quality because of the sheer volume of admissible aggravating evidence against Appellant. The erroneously admitted evidence thus did not substantially influence the adjudged sentence and was therefore harmless.

## E. Appellant's sentence is not plainly unreasonable.

### 1. Standard of Review/Applicable Law

Congress amended Article 66, UCMJ, in the National Defense Authorization Act for Fiscal Year 2022, adjusting the lens through which courts of criminal appeals (CCAs) review sentencing.[74] This change permits CCAs to evaluate sentences for offenses occurring on or after 28 December 2023 to determine "whether the sentence is plainly unreasonable."[75]

The CAAF has not defined the "plainly unreasonable" standard for sentence appropriateness review. Although the Manual for Courts-Martial previously included a definition for "plainly unreasonable," this definition was removed to allow "plainly unreasonable" to be interpreted according to its plain meaning for review under Article 66(e).[76]

### 2. Analysis

While there are some variances in sentencing mandates between military and federal courts, the federal courts, in interpreting what is meant by "plainly unreasonable," have clarified that Congress intends there to be a distinction between "unreasonable" and "plainly unreasonable." Therefore, as the Fourth Circuit held in *United States v. Crudup*, determining whether a sentence is "plainly unreasonable" begins with an analysis of whether the sentence was

---

[73] *See, e.g., United States v. Hursey*, 55 M.J. 34, 36 (C.A.A.F. 2001) (concluding that an error was harmless in part because the record was "replete" with similar admissible evidence).

[74] We acknowledge that Article 66, UCMJ "should be approved" review authority for consideration of sentences was removed for violations of the UCMJ offenses on or after 28 December 2023. *See* Nat'l Def. Authorization Act for Fiscal Year 2022, Pub. L. No. 117-81, § 539E, 135 Stat. 1541, 1700-06 (2021).

[75] 10 U.S.C. § 866(e)(1)(D).

[76] *See MCM* (2024 ed.), app'x 15, Analysis of the Composition of the Manual, the Preamble, and the Rules for Courts-Martial at A15-29.

"unreasonable."[77] "Unreasonable" is defined as "[n]ot guided by reason; irrational or capricious."[78] If we determine the sentence was not "unreasonable," then further analysis is unnecessary. Only if the sentence is determined to be "unreasonable" do we then examine whether it was "plainly" so. Consistent with the decisions of our superior court and that of federal courts, we define "plain" to mean "clear or obvious."[79]

Appellant, a 29-year-old married Sailor, engaged in a clandestine and sexually explicit conversation with someone he believed to be 12 years old. He then traveled to meet her in order to engage in sexual activity. He further viewed and distributed child pornography and participated in online chats where he engaged in highly sexualized discussions about sex with children, including his own infant child and his sister-in-law. Based on Appellant's brazen and substantial misconduct, the sentence adjudged by the military judge was not unreasonable, and we therefore will not disturb it.

## III. CONCLUSION

After careful consideration of the record, the briefs of appellate counsel, and the oral arguments held on 11 May 2025, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[80]

The findings and sentence are **AFFIRMED**.

FOR THE COURT:



MARK K. JAMISON
Clerk of Court

---

[77] *See United States v. Crudup*, 461 F.3d 433, 438 (4th Cir. 2006).

[78] Black's Law Dictionary (11th ed. 2019).

[79] *See United States v. Cole*, 84 M.J. 398, 404 (C.A.A.F. 2024) (quoting *United States v. Bodoh*, 78 M.J. 231, 236 (C.A.A.F. 2019); *See also Crudup*, 461 F.3d at 439.

[80] Articles 59 & 66, UCMJ.